**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**


**H&R BLOCK TAX SERVICES LLC,**

**Plaintiff,**

**v.**                                          **Case No. 12-CV1320-SOW**

**LUTGARDO ACEVEDO-LOPEZ,**

**Defendant.**


**DEFENDANT'S ANSWER TO COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF, AND DEFENDANT'S COUNTERCLAIM AGAINST PLAINTIFF**

NOW COMES DEFENDANT Lutgardo Acevedo-Lopez (herein referred to as "Defendant", "Acevedo" or Counter-Claimant") through the undersigned attorneys and presents this Answer to Plaintiff's Complaint and Counterclaim.

**Answer and Affirmative Defenses**

Introductory Statement

1.      Paragraph 1 is admitted.

2.      Paragraph 2 is denied.

Citizenship of the Parties

3.      Regarding paragraph 3, the citizenship of Plaintiff as alleged in the first sentence of this paragraph is admitted by Defendant.  However with respect to the remaining allegations of this paragraph regarding the existence and citizenship of other members of Plaintiff, Defendant lacks knowledge or information sufficient to form a belief about the truth of those allegations.

4.      Paragraph 4 is admitted.

Jurisdiction and Venue

5.    Paragraph 5 is denied.

6.    With respect to paragraph 6, there is an agreement between the parties that contains, in part, a purported venue clause, but Defendant states that contract speaks for itself, and Defendant denies the agreement provides venue in this Court for this action, and that Defendant has "contractually agreed to venue".  Defendant denies that a substantial part of events giving rise to the claim occurred in the Western District of Missouri, Defendant denies that he has waived any objection to venue and personal jurisdiction in this Court, and Defendant denies all other allegations of paragraph 6.

Background Facts

A.  The Parties' Franchise Relationship

7.    Paragraph 7 is admitted.

8.    Paragraph 8 is admitted.

9.    Paragraph 9 is admitted.

10.    Paragraph 10 is admitted.

11.    Paragraph 11 is admitted.

12.    Paragraph 12 is admitted.

13.    Paragraph 13 is admitted.

14.    Paragraph 14 is admitted. Acevedo affirmatively alleges that he never breached his agreements with Plaintiff and further that he acted pursuant to Plaintiff's Executive Officers' representations and instructions.

15.    Paragraph 15 is admitted.

B. The Settlement Agreement

16. Paragraph 16 is admitted.

17. Paragraph 17 is admitted.

18. Paragraph 18 is admitted.

C. The Assisted Acquisition Agreement

19. Paragraph 19 is admitted.

20. Paragraph 20 is admitted.

21. Paragraph 21 is admitted.

22. Paragraph 22 is admitted.

23. Paragraph 23 is admitted.

24. Paragraph 24 is admitted.

25. Paragraph 25 is admitted.

D.  Acevedo's Defaults and Termination

26.    Paragraph 26 is denied.  Defendant affirmatively alleges that at all times he complied with pertinent obligations under the agreement and pertinent amendments, as well as verbal instructions given to him by and with the knowledge of Plaintiff's Executive Officers, namely: Phil Massini, Mike Elkins, José AdriánEscalona, Omar Morales, Brad Peacock, Lefvia J. Negrón, Chad Kilgore, Brian Schmidt, Esq. and Jyl London.    As a matter of fact this information was directly given by Defendant to Block's Assistant General Counsel, Cheryl L. Bisbee during more than one conversation.  Regarding the conversion of the offices, the reality of the matter is that it was more costly for Plaintiff itself to make the conversion because of the interruption in services, and Plaintiff's Executives gave instructions to Defendant to continue using the same software and that all services would be picked up in the system in order to

capture the dollar amount and royalties. Defendant did not refuse at any time to open his books and give information or fail at any time to comply with his obligations.

27. Regarding Paragraph 27, it is admitted that Block sent the referred correspondence. However Defendant affirmatively alleges that even before that correspondence was sent to Defendant, Defendant had already had more than one conversation with Cheryl Bisbee, the person who signed the letter, and clarified that he was following the specific instructions given to him by and with the knowledge of Plaintiff's Executive Officers (Phil Massini, Mike Elkins, José AdriánEscalona, Omar Morales, Brad Peacock, Lefvia J. Negrón, Chad Kilgore, Brian Schmidt, Esq. and Jyl London) to the effect that: in due time Block would do a "set-off" between the amounts Block owed Defendant and the amounts that Defendant could possibly owe Plaintiff, and that until such calculation was made Defendant should hold on making any payments. Defendant specifically told Bisbee that he was available to make the calculation and proceed to update the account and relationship status. However, the next thing that happened is the receipt of the Notice of Termination. Again Defendant called Bisbee and clarified that he was available to resolve the matter and then again the next thing received by Defendant is the Complaint and Process.

28. Paragraph 28 is denied. Please see affirmative allegations and defenses raised in Paragraphs 26 and 27, above.

29. Paragraph 29 is denied. Please see affirmative allegations and defenses raised in Paragraphs 26 and 27, above.

<u>Count I</u>

(Breach Of Contract: Failure To Pay Royalties)

30.     Paragraph 30 does not need a response from Defendant other than the ones contained in Paragraphs 1-29, above.  In case a response is necessary the Paragraph is denied.

31.     Paragraph 31 is admitted.

32.     Paragraph 32 is denied. See Paragraphs 26 and 27, above.

33.     Paragraph 33 is denied. See Paragraphs 26 and 27, above.

34.     Paragraph 34 is denied.  See Paragraphs 26 and 27, above.  Furthermore, Defendant affirmatively alleges that any damages suffered by Plaintiff, if at all, are the result of its acts in ignoring Defendant's explanations and invitations to resolve the matter.  All of the above arose because of the conflict created by Plaintiff's own Executive Officers giving Defendant instructions as the problems with the daily operation of the business were presenting themselves and were being resolved by those instructions.

<u>Count II</u>

(Breach of Contract: Failure to Pay Amount Owed Under Settlement Agreement)

35.     Paragraph 35 does not need a response from Defendant other than the ones contained in Paragraphs 1-34, above.  In case a response is necessary the Paragraph is denied.

36.     Paragraph 36 is admitted.

37.     Paragraph 37 is denied. See Paragraphs 26 and 27, above.

38.     Paragraph 38 is denied.  See Paragraphs 26 and 27, above.  Furthermore, Defendant affirmatively alleges that any damages suffered by Plaintiff, if at all, are the result of its acts in ignoring Defendants' explanations and invitations to resolve the matter.  All of the above arose because of the conflict created by Plaintiff's own Executive Officers giving

Defendant instructions as the problems with the daily operation of the business were presenting themselves and were being resolved by those instructions.

Count III

(Breach of Contract: Failure to Pay Amounts Owed Under The Promissory Note)

39.     Paragraph 39 does not need a response from Defendant other than the ones contained in Paragraphs 1-38, above.  In case a response is necessary the Paragraph is denied.

40.     The first sentence of paragraph 40 is admitted as far as it is a recitation of the content of the Assisted Acquisition Agreement.  The remainder of the sentence and the rest of the paragraph, including all allegations of default by Defendant, are denied.  See Paragraphs 26 and 27, above.

41.     The first sentence of paragraph 41 is admitted as far as it is a recitation of the content of the Assisted Acquisition Agreement.  The remainder of the sentence and the rest of the paragraph, including all allegations of default by Defendant, are denied.  See Paragraphs 26 and 27, above.

42.     Paragraph 42 is admitted insofar as it is a recitation of the content of the Notice of Termination.  The rest of the paragraph is denied as well as any allegation of noncompliance on the part of Defendant.

43.     Paragraph 43 is denied.  See Paragraphs 26 and 27, above.

44.     Paragraph 44 is denied.  Defendant affirmatively alleges that any damages suffered by Plaintiff, if at all, are the result of its acts in ignoring Defendants' explanations and invitations to resolve the matter because of the conflict created by Plaintiffs' own instructions given through its Executive Officers, as mentioned above.  All of the above arose because of the conflict created by Plaintiff's own Executive Officers giving Defendant instructions as the

problems with the daily operation of the business were presenting themselves and were being resolved by those instructions.

<u>Count IV</u>

(Breach Of Contract: Violation Of Obligations to Deliver Customer Records To Block)

45.     Paragraph 45 does not need a response from Defendant other than the ones contained in Paragraphs 1-44, above.  In case a response is necessary the Paragraph is denied.

46.     Paragraph 46 is admitted as far as it is a recitation of the content of the FLA.

47.     Paragraph 47 is denied. See Paragraphs 26 and 27, above.

48.     Paragraph 48 is denied.  Defendant affirmatively alleges that any damages suffered by Plaintiff, if at all, are the result of its acts in ignoring Defendants' explanations and invitations to resolve the matter.  All of the above arose because of the conflict created by Plaintiff's own Executive Officers giving Defendant instructions as the problems with the daily operation of the business were presenting themselves and were being resolved by those instructions.

49.     Paragraph 49 is denied.  Defendant affirmatively alleges that any damages suffered by Plaintiff, if at all, are the result of its acts in ignoring Defendants' explanations and invitations to resolve the matter.  All of the above arose because of the conflict created by Plaintiff's own Executive Officers giving Defendant instructions as the problems with the daily operation of the business were presenting themselves and were being resolved by those instructions. Furthermore, Defendant affirmatively alleges that Plaintiff has an adequate remedy at law, and there is no irreparable harm to Plaintiff, as all monetary amounts and client information are easily ascertainable from the business records themselves.

50.     Paragraph 50 is denied. See Paragraphs 26, 27 and 49, above.

<u>Count V</u>

(Breach Of Contract: Violation of Post-Termination Covenants)

51.     Paragraph 51 does not need a response from Defendant other than the ones contained in Paragraphs 1-50, above.  In case a response is necessary the Paragraph is denied.

52.     Paragraph 52 is admitted insofar as it is a recitation of the content of the FLA.

53.     Paragraph 53 is admitted insofar as Defendant still considers himself a Block franchisee, and there being no valid reason in law and in fact for Block to unilaterally terminate the FLA and its pertinent amendments. The client information as well as the fees for services are easily ascertainable from the system operation in order to recognize Block's franchise fees. Defendant expressly denies all other allegations of paragraph 53, including that he is obligated to discontinue services.

54.     Paragraph 54 is denied as there has been no breach on the part of Defendant of the FLA or its amendments.

55.     Paragraph 55 does not need a responsive allegation on the part of Defendant.  The purpose of the clauses mentioned therein is a subjective matter known only to Block and or its legal counsel.  In case an answer is deemed necessary the Paragraph is denied.

56.      Paragraph 56 is denied. Defendant affirmatively alleges that any damages suffered by Plaintiff, if at all, are the result of its acts in ignoring Defendants' explanations and invitations to resolve the matter. All of the above arose because of the conflict created by Plaintiff's own Executive Officers giving Defendant instructions as the problems with the daily operation of the business were presenting themselves and were being resolved by those instructions. Furthermore, Defendant affirmatively alleges that there is an adequate remedy at

law and is no irreparable harm to Plaintiff as all monetary amounts and client information are easily ascertainable from the business records themselves.

57.　　Paragraph 57 is denied.　Defendant affirmatively alleges that any monetary damages, costs and attorney's fees as a result of this action are attributable only to Plaintiff for failing to acknowledge Defendant's conflictive position created by Plaintiff's own Executive Officers who gave Defendant instructions as to the manner in which he acted in the operation of the business and which had the practical effect of amending the pertinent provisions of the agreements. See Paragraphs 26, 27 and 49 above.

58.　　Defendant denies all allegations of Plaintiff's Complaint not expressly admitted herein.

<u>Additional Affirmative Defenses</u>

1.　　Defendant complied with all due obligations pursuant to the business relationship with Plaintiff and all amendments to such business relationship, contracts and agreements.

2.　　The Complaint fails to state a claim or cause of action with respect to any and all of the claims raised therein, for which reason it should be dismissed.

3.　　The Court lacks subject matter jurisdiction to issue any ruling regarding the Complaint's allegations.

4.　　This Honorable Court lacks personal jurisdiction over Defendant to issue any ruling regarding the Complaint's allegations.

5.　　All or various of the causes of action alleged in the Complaint are time barred.

6.　　Plaintiff should not be allowed to present the complaint against Defendant because of the application of the "laches" doctrine.

7.　　Plaintiff lacks standing to file the Complaint.

8. Plaintiff has failed to join an indispensable party to this action.

9. Plaintiff should not be allowed to present any claims against Defendant because of the application of the "own acts" doctrine.

10. Under the doctrines of "Res Judicata" and "estoppel", Plaintiff is barred from bringing the claims contained in the Complaint.

11. In the present case the doctrine of "rebus sic stantibus" is applicable.

12. In the present case the doctrine of "exceptio non adimpleti contractus" is applicable.

13. Plaintiff is not entitled to any remedy under any statute or regulation that would provide jurisdiction, injunctive relief, or other relief.

14. Defendant, at all relevant times complied with all clauses of the contract between the parties, and with applicable federal, state and other regulations, standards and laws.

15. Defendant's actions related to Plaintiff, were all legitimate in the course of business and based on Plaintiff's Executive Officers' own instructions and verbal modifications to the contracts and or agreements.

16. The damages claimed do not exist but even if they do, which is denied, they are grossly exaggerated and are speculative.

17. Plaintiff is not entitled to any of the remedies requested and was not the victim of any damaging action from Defendant, and Defendant does not owe any amount of money to the Plaintiff for the reasons alleged in the Complaint or for any reasons whatsoever.

18. At all times alleged in the Complaint defendant acted in good faith as any reasonable and prudent business person would have acted in similar circumstances. Defendant has not acted negligently with respect to the events on which the Complaint is based or with

respect to any present or future events, whatsoever, that could, directly or indirectly, be related to the facts alleged therein. Furthermore, Defendant has always acted in a prudent and diligent manner and without any malice with respect to matters related to its duties, if any, regarding Plaintiff.

19.     All actions regarding the contracts and agreements between the parties have been legitimate and not for any other reasons. The truth of the matter is that Plaintiff's own Executive Officers with proper authority gave intructions to Defendant which had the effect of modifying the contractual relationship between the parties and now Plaintiff seeks compensation for alleged breach caused by Plaintiff itself. As a matter of fact, other Executive Officers had active knowledge of the instructions given to Defendant and acquiesced to them and did not act in any manner contrary to them.

20.     Plaintiff did not comply with its legal obligations under the contracts and agreements and under the applicable laws.

21.     This Court should not exercise supplemental, pendent, or ancillary jurisdiction over claims lacking an independent basis for jurisdiction.

22.     Defendant does not owe plaintiff any amount pertaining to royalties or previous settlement installments that exceeds amounts owed by Plaintiff to Defendant, and which should be set off.

23.     Defendant has not acted or failed to act, in any way that could be considered the proximate cause of Plaintiff's alleged damages.

24.     Previous to the illegal and unilateral termination by Plaintiff, Plaintiff never requested Defendant to act in any way or manner in order to avoid such cancellation.

25.     Plaintiff has always been available to resolve the financial 'setoff', as referred to by Plaintiff's own Executive Officers (when they were employed therein) and continue the business relationship with Plaintiff.  As a matter of fact Defendant regards himself as still being in a business relationship with Plaintiff.

26.     Even assuming, for the sake of argument, that Plaintiff was exposed to a breach of contract by Defendant,  which is denied, that conduct is not atributable and/or was not under the control of Defendant but to Plaintiff's own Executive Officers.

27.     Even assuming, for the sake of argument, that Defendant caused any damage to Plaintiff,  which is denied, that conduct is not attributable to and/or was not under the control of Defendant but to Plaintiff's own Executive Officers, now presumably dismissed from their employment by Plaintiff.

28.     Even assuming, for the sake of argument, that the alleged incidents did happen, which is denied, they were authorized by Plaintiff's own Executive Officers and they were known by other Executive Officers with proper authority, thereby modifying the existing Contract and agreements between the parties.

29.     Even assuming, for the sake of argument, that the alleged incidents took place, which is denied, there is no proximate cause between the alleged conduct and a potential tangible effect in the terms and conditions of the contracts and agreements, because Defendant at all times invited Plaintiff to review the documents, the computer information and data and to put into effect the referred 'set-off' proposed by Plaintiff's own Executive Officers with the knowledge of other Executive Officers of Plaintiff who had proper authority.

30. Even assuming, for the sake of argument, that the alleged incidents took place, which is denied, they were totally consented to and/or desired by Plaintiff through its own Executive Officers.

31. Plaintiff has not sustained damages as a consequence of Defendants' actions. If damages were sustained, they were entirely caused by Plaintiff's own actions and conduct. Plaintiff assumed the risk and/or or contributed to its damages.

32. There is no causal relation between any action or omission by Defendant and the damages claimed in the Complaint.

33. Should the damages alleged by Plaintiffs prove to be true, which is emphatically hereby denied, the acts and/or omissions, fault or negligence of people other Defendant were the cause of the injuries allegedly caused to Plaintiff. These persons were not acting as agents or representatives of Defendant and hence, Defendant is not liable for them.

34. Plaintiff has a duty to mitigate the Damages requested in the Complaint and the same should be denied or substantially reduced to the extent that they did not comply with such duty, for example by responding to Defendant's invitations to gather information and documents in order to conduct the 'set-off' proposed by Plaintiff's own Executive Officers.

35. Defendant hereby reserves its right to amend this answer to the Complaint and to raise any other affirmative defense that may arise after the discovery procedures.

WHEREFORE, Defendant Acevedo respectfully prays for Judgment as follows:

1) Dismissal with prejudice of this Complaint;

2) Plaintiff receives no compensation or other relief by reason of the Complaint;

3) that judgment be entered for Defendant and against Plaintiff on all claims of the Complaint;

4) that Defendant be awarded reasonable costs and attorneys' fees; and

5) that Defendant be awarded its costs and such other and further relief as the court deems just and proper.

## **COUNTERCLAIM**

NOW COMES DEFENDANT in the case of caption, now also known as "Counterclaimant", through the undersigned attorneys and very respectfully presents his Counterclaim against Plaintiff as follows:

1.      This Counterclaim is presented as it arises out of the transaction or occurrence that supposedly is the subject matter of the Plaintiff's claim and it does not, at this time, require adding another party over whom the court cannot acquire jurisdiction.

2.      This is a Counterclaim for: 1) breach of contractual relationship, 2) damages to the present and future business and goodwill of Counterclaimant, and 3) damages to the emotional condition of Counterclaimant and his family members for being the object of this meritless action (which is the second time during the business relationship between the parties since 2007), all caused by the acts of Plaintiff in the original action, "Block".

3.      The parties executed an 'Assisted Acquisition Asset Purchase Agreement' in January 20, 2012.

4.      Pursuant to Article II Consideration for Transfer, Section 2.1 (B) Block ("Purchaser" therein) was supposed to pay three hundred and fifty thousand dollars ($350,000.00) to Counterclaimant ("Seller" therein) as a Contingent Payment.

5.      All contingencies in order for Plaintiff to Pay Counterclaimant herein were met.

6.      Regardless of the fact that all contingencies were met in order for Block to pay Counterclaimant the $350,000.00, Block failed to pay the contingent payment as of this day.

7.      Plaintiff, through its Executive Officers with pertinent, due and credible authority, modified the terms of the business relationship between the parties and later decided not to honor those modifications and proceeded to file this meritless and prejudicial action causing damages to Counterclaimant and to his family nucleus.

8.      The modifications made to the business relationships between the parties were specifically pertinent to the payments by Counterclaimant to Plaintiff and to the conversion to the software of Plaintiff.

9.      Regarding the payments by Counterclaimant to Plaintiff, the Executive Officers of Plaintiff (presumably now dismissed from employment) stated that the payments would be set-off or off-set from the payments Plaintiff owed Counterclaimant and that all pertinent information would be recorded and captured for later calculations.  There was no risk for any party by electing this method by Plaintiff.

10.      Regarding the conversion to Plaintiff's software, Plaintiff's Executive Officers themselves understood that with the tax season almost on top of them it would cause a hindrance and delay to the operations.  Therefore, since the system in use at the time would record and capture information for future use anyway, in order to avoid further delays Plaintiff's Executive Officers allowed Counterclaimant to offer services with the software system in place at the time.

11.      Counterclaimant only acted pursuant to the instructions given him by Plaintiff, who now claims damages and breach of contract for Counterclaimant having followed those instructions.

12.      Regardless of the fact that Counterclaimant has always been available to offer pertinent information, facts, services data to Block on all business contracts and agreements between the parties, Block has not made any effort to resolve the matter and refused to use the

availability of Counterclaimant for the benefit of both parties, choosing instead to pursue a meritless and prejudicial legal action.

WEHREFORE, Counterclaimant herein prays for a judgment in his favor and against Plaintiff for $350,000.00 pursuant to the completion of all contingencies for payment of the contingent payment, and for damages to his actual and future business goodwill and for emotional and mental anguish damages suffered as a consequence of the acts of Plaintiff in a sum yet to be determined by the Court in a full hearing but which will at least be one million dollars ($1,000,000.00).

SWANSON MIDGLEY, LLC

/s/ John J. Miller
John J. Miller, #32215
4600 Madison, Suite 1100
Kansas City, MO 64112
Phone: 816-842-6100
Fax: 816-842-0013
Email: jmiller@swansonmidgley.com

-And-

Marie E. LópezAdames
USDCPR 208212
GONZALEZ LOPEZ & LOPEZ ADAMES
#1126 Ashford Ave. Suite C-10
The Diplomat Condominium
San Juan PR 00907
Phone: 787-724-821
Fax: 787-722-8289
Email: bufete@gllalaw.com
Attorneys for Defendant

## Certificate of Service

I hereby certify that on January 31, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to:

David M. Kight
Casey Murray
Spencer Fane Britt & Browne LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106

and

Iris Figueroa Rosario
Peter J Klarfeld
Gray, Plant, Mooty, Mooty and Bennett, PA
600 New Hampshire Avenue N.W.
The Watergate - Suite 700
Washington, DC 20037


/s/ John J. Miller_____
Attorney for Defendant