IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| H&R BLOCK TAX SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 12-1320-CV-W-SOW |
| | ) | |
| LUTGARDO ACEVEDO-LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is plaintiff H&R Block Tax Services LLC Motion for Summary Judgment (Doc. #84) and defendant Lutgardo Acevedo-Lopez's Motion to Dismiss or For Summary Judgment, and for Change of Venue (Doc. #86).  For the following reasons, H&R Block's motion is granted and Acevedo's motion is denied.

## I. Background[1]

### A.  The Parties

Plaintiff H&R Block Tax Services LLC ("H&R Block"), a Missouri corporation, operates tax return preparation offices and franchises others to operate H&R Block offices under its service mark in exchange for a payment of royalties.  Defendant Lutgardo Acevedo-Lopez ("Acevedo"), a citizen of Puerto Rico, is a certified public accountant and lawyer who has owned and operated accounting, auditing, tax and consulting businesses in Puerto Rico.

---

[1]  For the purposes of this Order, the Court finds the facts to be as follows.  Properly controverted facts, facts immaterial to the resolution of the pending motions, and arguments presented under the guise of facts have been omitted.

**B. The Parties' Franchise Relationship**

On August 28, 2007, Acevedo entered into a Conversion Agreement with H&R Block. Pursuant the Conversion Agreement, H&R Block paid Acevedo $700,000 in exchange for his right, title and interest in all of his tax preparation client lists and files. Acevedo agreed to convert his existing tax preparation offices in Puerto Rico[2] to franchises of H&R Block. Further, Acevedo entered into a Franchise License Agreement ("FLA") with H&R Block. Under the FLA, Acevedo had the right to operate franchised tax return preparation offices at his seven then-existing locations. Under the Conversion Agreement, H&R Block granted Acevedo a license to use the client lists and materials he sold to H&R Block pursuant to the FLA. The Conversion Agreement also stated that Acevedo's license to use H&R Block's client information would terminate upon the expiration or termination of the FLA.

Under the FLA, Acevedo agreed to pay a royalty to H&R Block calculated as a percentage of his gross receipts from the preparation of tax returns and the performance of related services at his franchise locations. Failing to pay such royalties constituted a material breach of the FLA under Section 14(e). Acevedo, moreover, agreed that he would have fifteen (15) days from receipt of a written notice of any such breach in which to pay the amounts owed, and that a failure to cure the breach within the fifteen day time period would result in an immediate termination of the franchise agreement. In Section 16(a) of the FLA, Acevedo agreed that in the event of a termination of the FLA due to a default on his part, he would pay H&R Block all damages, costs, and expenses, including reasonable attorneys' fees, incurred by H&R Block. Importantly, Section 25 of the FLA provided that the FLA could only be amended in a writing signed by both parties; and Section 24 provided that the failure of a party to enforce any of the terms of the FLA for any period of time "shall not be deemed a waiver of such terms or

---

[2] This included two offices in Aguadilla and one each in Vega Baja, Vega Alta, Hatillo, Arecibo, and Isabella.

conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement."

## C. The 2010 Settlement Between the Parties

In 2010, the parties were involved in litigation concerning obligations under the FLA and the Conversion Agreement. In January 2010, H&R Block sent Acevedo a written notice informing him of multiple defaults under the FLA, including his failure to report all bookkeeping revenue and operational expenses. The notice informed Acevedo that H&R Block had overpaid $93,000 in earn-out payments for the prior year based on his inaccurate reporting. This prompted Acevedo to file suit against H&R Block in the Superior Court of Caguas in Puerto Rico. The case was removed to the United States District Court for the District of Puerto Rico. In October 2010, the parties entered into a Settlement Agreement, where Acevedo agreed to pay H&R Block $100,000 in four installments: $30,000 on or before March 31, 2011; $30,000 on or before March 31, 2012; $30,000 on or before March 31, 2013; and $10,000 on or before March 31, 2014.

## D. The Assisted Acquisition Agreement

In January 2012, Acevedo entered into an Assisted Acquisition Asset Purchase Agreement (the "Asset Purchase Agreement"), in which he acquired the assets of a tax preparation business known as "Lutgardo Too Tax Advisors." Lutgardo Too Tax Advisors was owned by Acevedo's brother who happens to go by the same name. Under the Asset Purchase Agreement, Acevedo acquired four additional tax preparation offices in Puerto Rico.[3] On January 25, 2012, H&R Block entered into an Assisted Acquisition Agreement pursuant to which H&R Block loaned Acevedo $800,000 in order to purchase Lutgardo Too Tax Advisors. The loan was evidenced by a promissory note signed by Acevedo. Under the promissory note,

---

[3] These offices were located at Mayaguez, Aguadilla, Hatillo, and Yauco.

Acevedo promised to pay H&R Block any and all amounts loaned under the note, plus interest, if he defaulted under the Assisted Acquisition Agreement. No payments were required unless requested by H&R Block.

In signing the Assisted Acquisition Agreement, Acevedo acknowledged that the locations, clients, and client lists he obtained by purchasing Lutgardo Too Tax Advisors would be treated in accordance with the terms of the FLA. Acevedo further agreed that he would pay royalties to H&R Block on all revenue received at the new locations pursuant to the FLA. Moreover, Acevedo agreed that following the 2012 tax season, he would convert all of his locations to the H&R Block proprietary software for the preparation of federal and state tax returns. Acevedo agreed to use the proprietary software by July 1, 2012. Pursuant to the Assisted Acquisition Agreement, Acevedo agreed that a default by him under the FLA would also constitute a default under the Assisted Acquisition Agreement.

In January 2012, the parties entered into an Amendment to the FLA that expanded his Franchise Territory to include the new locations he obtained when he purchased Lutgardo Too Tax Advisors. In addition to loaning Acevedo $800,000, the Assisted Acquisition Agreement provided that H&R Block may loan Acevedo up to an additional $350,000, depending on the volume of gross receipts of his franchised business during the 2012 business season.

### E. Acevedo's Royalty Obligation For The 2012 Tax Season

The parties largely dispute the remaining facts. In March 2012, it is undisputed that Acevedo would defer making royalty payments and his settlement agreement payments. After the 2012 tax season, though, a true-up (according to Acevedo) or a decision (according to H&R Block) would be made regarding the amount Acevedo owed H&R Block under his franchise agreement and Settlement Agreement. At this time it would also be determined whether

Acevedo was entitled to some or all of the $350,000 provided for in the Assisted Acquisition Agreement.[4]

On August 1, 2012, Acevedo received an email from Adrian Escalona, H&R Block's Regional Director for Puerto Rico, containing an analysis of Acevedo's and H&R Block's financial obligations as of that date. This email stated that H&R Blocked had determined that Acevedo owed H&R Block $531,405.46 in royalties, and that Acevedo was not entitled to any of the potential $350,000.

## F. Termination of the Franchise Agreement

On August 21, 2012, Acevedo received a letter from H&R Block's Assistant General Counsel, Cheryl Bisbee, informing him that he was in default under the FLA. Bisbee advised Acevedo that he was in default because he had not paid the $531,405.46 in royalties or the $30,000 settlement payment due on March 31, 2012. Acevedo argues that he was not in default, citing Jose Escalona's deposition where he testified that Mike Elkins and Phil Mazzini told Acevedo not to make the payments until issues concerning the proprietary software were resolved. The notice from Bisbee stated that Acevedo had fifteen days to cure his default by paying the amounts owed or his franchise agreement would be terminated. To date, Acevedo has not paid any amounts owed to H&R Block. On September 11, 2012, Bisbee advised Acevedo that his franchise agreement with H&R Block was terminated as a result of failing to pay the amounts owed to H&R Block.

---

[4]   Acevedo's principal argument in this case is that H&R Block has refused to honor a true-up agreement with him. According to Acevedo, the parties reached an oral agreement to modify the franchise agreement with respect to several issues, including determination of payment of royalties and payment of additional loan amounts due to Acevedo. Further, Acevedo submits that H&R Block's regional Director for Puerto Rico explained that after tax season both parties would sit down and conduct a true-up, and after the true-up, the parties would mutually agree what money was owed and to whom. Acevedo contends that H&R Block has refused to honor the true-up agreement and that it has refused his request to meet and reach an agreement on the amounts due between the parties.

## G. Post-Termination Contractual Obligations

The FLA contained post-termination obligations that were designed to allow H&R Block to take possession of certain confidential information maintained by Acevedo and to prevent Acevedo from using the confidential information to compete against H&R Block.  In Section 12, the FLA provides that for a period of two years after the termination of the franchise agreement, Acevedo would neither solicit clients to whom he had provided tax services while he was operating under the FLA, nor operate similar tax return businesses in or within twenty-five miles of his Franchise Territory.  In Section 16, the FLA provides that Acevedo would, upon termination, deliver to H&R Block all client files and client lists of his formerly franchised business, as well as other files and materials related to the business.  Since the time H&R Block terminated the franchise agreement, Acevedo has not complied with any of the post-termination contractual obligations.  Specifically, Acevedo has failed to:  (1) deliver any client records or client lists and (2) discontinue the operation of his tax return preparation business within 25 miles of his formerly franchised locations.

In 2013, the gross receipts of the independent tax return business that Acevedo operated at his former franchised locations were between $1 million and $1.8 million.  Two other H&R Block franchisees in Puerto Rico have competed or were in a position to compete for clients in Acevedo's territory.  H&R Block has recently purchased one of the franchises and will be seeking to provide tax return preparation services to clients in Acevedo's territory in the 2014 tax season.

## H. The $800,000 Loan Under the Assisted Acquisition Agreement

Section 14 of the Assisted Acquisition Agreement between the parties provides that a default under the franchise agreement would also constitute a default under the Assisted

Acquisition Agreement.  The promissory note Acevedo signed in connection with receiving $800,000 from H&R Block stated that the loan would have to be repaid upon demand by H&R Block in the event Acevedo defaulted under the Assisted Acquisition Agreement.  H&R Block declared an event of default on September 11, 2012, and demanded Acevedo pay back the $800,000 as required by the promissory note.

**I.  March 31, 2013 Payment**

Under the terms of the 2010 Settlement Agreement, Acevedo was required to make two $30,000 payments on March 31, 2012 and March 31, 2013, respectively.  Acevedo has failed to make these payments.

**J.  Acevedo's Counterclaims**

In Count I of his Amended Counterclaim, Acevedo alleges a breach of contract and seeks $350,000 he alleges he was entitled to as an Additional Loan Amount under Section 2 of the Assisted Acquisition Agreement.  In Count II, Acevedo alleges a claim for tortious interference with his contracts and expectant business relations.  Count III alleges a claim for defamation. Acevedo alleges that H&R Block tortiously interfered with his contracts and business relationships as well as defamed him by telling clients that he was no longer in business or associated with H&R Block.

II.  <u>Discussion</u>

**A.  Acevedo's Motion to Dismiss for Lack of Personal Jurisdiction**

Pursuant to Rule 12(b)(2), Acevedo moves to dismiss this action based on lack of personal jurisdiction.  The party seeking to invoke federal court jurisdiction bears the burden of establishing that jurisdiction exists.  <u>Mountaire Feeds, Inc. v. Argo Impex, S.A.</u>, 677 F.2d 651, 653 n.3 (8th Cir. 1982) (citations omitted).  To defeat a motion to dismiss based on a lack of

personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction. <u>Dakota Indus., Inc. v. Dakota Sportswear, Inc.</u>, 946 F.2d 1384, 1387 (8th Cir. 1991) (citations omitted). However, "[i]f the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." <u>Dairy Farmers of Am., Inc. v. Bassett & Walker Intern., Inc.</u>, 702 F.3d 472, 475 (8th Cir. 2012) (citing <u>Wells Dairy, Inc. v. Food Movers Int'l, Inc.</u>, 607 F.3d 515, 518 (8th Cir. 2010)). A plaintiff's "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." <u>Id.</u> (internal quotation marks omitted). If the Court relies only on pleadings and affidavits in making its decision, and does not conduct a hearing on the issue, the Court must view the facts in the light most favorable to the non-moving party, and resolve all factual conflicts in favor of that party. <u>Id.</u>

Acevedo initially contends that the Court should dismiss this case for lack of personal jurisdiction. Acevedo's affidavit states that he lives in Puerto Rico; he has not traveled Missouri; he has not conducted business in Missouri; he does not own real estate in Missouri; and he has not entered into a contract in Missouri. Thus, Acevedo argues he does not have any contact with Missouri that would permit exercise of jurisdiction over him under Missouri's long-arm statute. <u>See</u> <u>Viasystems, Inc. v. EBM-Pabst St. Georgen GMBH & Co.</u>, 646 F.3d 589, 593 (8th Cir. 2012) (Missouri's long-arm statute authorizes jurisdiction over any person or firm as to any action arising from, among other things, "transact[ing] business, mak[ing] a contract, or commit[ting] a tort within the state.") (citing Mo. Rev. Stat. § 506.500.1).

H&R Block advances four reasons why Acevedo's motion to dismiss for lack of personal jurisdiction should be denied: (1) Acevedo has actively litigated his claims in this forum, thereby waiving any objection to personal jurisdiction; (2) Acevedo consented to personal

jurisdiction in the FLA; (3) Acevedo agreed in the FLA that venue was proper in this court, which constituted an implied consent to personal jurisdiction; and (4) Acevedo's numerous purposeful contacts with Missouri provide a basis for personal jurisdiction.

In his reply, Acevedo argues that he has not waived his ability to assert personal jurisdiction because he pled the affirmative defense of personal jurisdiction in his initial Answer and Amended Answer.

A party may waive any objections to personal jurisdiction through his conduct.  See Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1199 (8th Cir. 1990); Floyd v. Kellogg Sales Co., 841 F.2d 226 (8th Cir. 1988).  The defense of lack of personal jurisdiction "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990) (citing Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939)); accord Cont'l Bank, N.A. v. Meyer, 10 F.3d 1293, 1296-97 (7th Cir. 1993) (affirming district court's decision that defendants' conduct during litigation constituted waiver of personal jurisdiction).  A defendant "may submit to the jurisdiction of the court by appearance."  MAK Automation, Inc. v. G.C. Evans Sales & Mfg. Co., No. 4:06-CV-1579-MLM, 2008 WL 185787, at *3 (E.D. Mo. Jan. 18, 2008) (citing Ins. Corp. of Ireland, 456 U.S. 694, 703 (1982)).

> A defendant may make a limited or special appearance for purposes of contesting personal jurisdiction.  If the appearing party requests relief or discloses a purpose that goes beyond challenging the jurisdiction of the court over the subject matter or the parties, the appearance will be considered general, and all jurisdictional challenges will be deemed waived.  By submitting extensive memoranda to the district court a defendant waives its right to contest personal jurisdiction.

Garrett v. Albright, No. 4:06-CV-4137-NKL, 2008 WL 920310, at *3 (W.D. Mo. April 1, 2008) (internal quotation marks and citations omitted).

The record reflects that Acevedo did assert in his Answer and Amended Answer the affirmative defense of lack of personal jurisdiction. However, Acevedo has raised no special or limited appearance to contest this Court's exercise of personal jurisdiction. See Yeldell, 913 F.2d at 539 ("Asserting a jurisdictional defect in the answer [does] not preserve the defense in perpetuity."); Knowlton, 900 F.2d at 1199. In his first appearance, Acevedo moved for an extension of time in order to obtain local representation to assist him in responding to H&R Block's Complaint, motions, and expedited discovery requests. In January 2013, Acevedo's Missouri counsel entered an appearance, without ever indicating that he was doing so for the sole purpose of contesting jurisdiction. See Knowlton, 900 F.2d at 1199; Nationwide Eng'g & Control Sys., Inc. v. Thomas, 837 F.2d 345, 347 (8th Cir. 1988). Furthermore, Acevedo has availed himself of the court's procedures by filing documents and participating in proceedings, all without raising the issue of personal jurisdiction. More specifically, Acevedo has argued against H&R Block's motion for a preliminary injunction in front of this Court and the Eight Circuit[5]; filed counterclaims against H&R Block; agreed to a Scheduling Order and subsequent amendments to the Scheduling Order, sought extensions of time to file various documents; engaged in and completed discovery; and fully briefed motions for summary judgment. In fact, Acevedo did not file a dispositive motion based on an absence of personal jurisdiction until H&R Block moved for summary judgment—approximately eleven months after this case began. See DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1176 (8th Cir. 1995) (defendant waived right to contest personal jurisdiction after submitting extensive memoranda to district court); see also Network Prof'l Inc. v. Network Intern. Ltd., 146 F.R.D. 179, 184 (D. Minn. 1993) (court found waiver when defendants waited to assert lack of personal jurisdiction until after the court

---

[5] Acevedo's counsel appeared before the Eighth Circuit to argue Acevedo's position regarding this Court's denial of H&R Block's request for preliminary injunctive relief. Nothing in the record suggests that Acevedo ever mentioned to the Eight Circuit that this Court lacked personal jurisdiction.

contemplated the merits of the case in a preliminary injunction motion). These actions unequivocally demonstrate Acevedo's request for relief beyond challenging jurisdiction; therefore, Acevedo has waived his ability to challenge jurisdiction. See TLC Vision (USA) Corp. v. Freeman, No. 04:12-CV-1855, 2013 WL 230254, at *4-5 (E.D. Mo. May 20, 2013); MAK Automation, Inc., 2008 WL 185787, at *3.

**B. Venue**

Acevedo argues that if the Court dismisses H&R Block's Complaint or grants summary judgment to him, then the Court should transfer his counterclaims to the United States District Court for the District of Puerto Rico for trial under 28 U.S.C. § 1404(a). Acevedo also maintains that if any portion of H&R Block's action survives, then it should be transferred to the United States District Court for the District of Puerto Rico.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking transfer under section 1404(a) bears the burden of proving that a transfer is warranted." In re Apple, Inc., 602 F.3d 909, 913 (8th Cir. 2010) (citation omitted). Convenience of the parties, the convenience of witnesses, and the interests of justice weigh into the section 1404(a) analysis, though the list is not exhaustive. Erra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 692 (8th Cir. 1997). The Eighth Circuit has not set forth an exhaustive list of specific factors to consider, rather the Eighth Circuit tells district courts to "weigh 'case specific factors' relevant to convenience and fairness" when considering whether a transfer is warranted. In re Apple, 602 F.3d at 913 (citation omitted).

Acevedo argues, and H&R Block does not dispute, that this case *could* have been brought in Puerto Rico. Acevedo argues that the convenience of his witnesses, none of whom have been deposed, all live in Puerto Rico. And since courts generally prefer live testimony, Puerto Rico is more convenient. Acevedo also argues—in conclusory fashion—that the interests of justice are better served by transferring this case and that the nature of relief H&R Block seeks gives Puerto Rico a superior interest in this case.

H&R Block argues that transferring this case is inappropriate because the FLA expressly provides that venue in this court would be proper. H&R Block correctly submits that the Supreme Court has recently decided a case directly on point. In <u>Atlantic Marine Construction Company Incorporated v. United States District Court for the Western District of Texas</u>, the Court clarified how lower courts are to treat forum selection clauses in the context of 28 U.S.C. § 1404. 134 S.Ct. 568, 581 (2013). The Court held that when a contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum," then such provisions "should be given controlling weight in all but the most exceptional cases." <u>Id.</u> (brackets omitted) (citing <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 31 (1988)). The Court went on to require district courts to adjust their usual section 1404(a) analysis in three ways. <u>Id.</u> As relevant to this case, the Court instructed lower courts:

> [n]ot to consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

<u>Id.</u> at 582. As a result, then, courts may only consider arguments pertaining to public-interest factors only, which "include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the

trial of a diversity case in a forum that is at home with the law." Id. 581 n.6. The Court concluded that the public-interest factors would rarely defeat a motion under section 1404(a), and "the practical result is that forum selection clauses should control except in unusual cases." Id. at 582.

Many of Acevedo's arguments relate solely to the convenience of the parties and witnesses, considerations the court may not consider when a valid forum selection clause is in play. See id. at 582.

In his Reply brief,[6] Acevedo attacks the validity of the forum selection clause, arguing that the FLA provides that Puerto Rico laws govern the parties' dispute, and further, that Puerto Rico law voids any franchise contract provision that establishes a governing law other than the laws of the Commonwealth of Puerto Rico. Acevedo further contends that Puerto Rico law "declares null and void any provision that would require a franchisee to litigate outside of Puerto Rico." Acevedo argues the following excerpt in the FLA establishes that the parties agreed to have the law of Puerto Rico apply: "this choice of law and venue provision shall not be construed as a waiver of any right conferred upon Franchisee by a state law to bring a legal proceeding in such state or have this Agreement interpreted by the laws of such state." Acevedo focuses on a small portion of Section 27, yet the Court must consider the entire paragraph. Prior to the excerpt cited by Acevedo, the FLA states in relevant part: "Any legal proceeding instituted by Franchisee against Block, whether or not arising out of or relating to this Agreement, shall be brought only in a federal or state court in Jackson County, Missouri, and Franchisee (and each owner) irrevocably submits to the jurisdiction of those courts and waives any objection Franchisee might have to either the jurisdiction or the venue in those courts. . . ."

---

[6] Ordinarily, courts do not consider issues raised for the first time in a reply brief. Martin v. Am. Airlines, Inc., 390 F.3d 601, 609 (8th Cir. 2004). Because H&R Block has addressed Acevedo's arguments in other motions, the court will address Acevedo's newly raised argument.

The plain language of the FLA supports H&R Block's position that Acevedo agreed to waive any objection to venue in this court if H&R Block initiated an action here.

Regarding Puerto Rico law, Acevedo argues that Puerto Rico Law 75 bars H&R Block from bringing an action against him except in Puerto Rican courts. The Court disagrees. First, the Supreme Court has specifically stated that Section 1404 governs a transfer analysis of forum selection clauses "notwithstanding any contrary state policy. <u>Stewart Organization</u>, 487 U.S. at 30 n.9. Second, even if the Court looked to Puerto Rican law, Acevedo's argument would fail. Law 75 provides as follows:

> Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void.

P.R. Laws Ann. tit. 10, § 278b–2. In other words, under Law 75, "a stipulation that *obligates* a Puerto Rican dealer to litigate claims outside of Puerto Rico is void as against public policy." <u>Ace Hardware Int'l Holdings, Inc. v. Masso Expo Corp.</u>, No. 11-CV-3928, 2012 WL 182236, at *3 (N.D. Ill. Jan. 23, 2012) (emphasis in original). Here, even if the forum selection clause in the FLA obligated Acevedo to litigate outside of Puerto Rico, it does not mean that venue is improper in Missouri. "The plain language of Section 278b-2 merely provides that the forum selection clause would be 'null and void'—it does not, as [Acevedo] argue[s], provide that the exclusive forum for Law 75 actions is Puerto Rico."

Acevedo's reliance on <u>Rafael Rodriguez Barril, Inc. v. Conbraco Industries, Inc.</u>, 619 F.3d 90 (1st Cir. 2010) does not compel a different conclusion. In <u>Conbraco</u>, the issue fell under Puerto Rico Law 21, not 75, and the court's comments regarding "Law 75 stand only for the proposition that Law 75 prohibits the enforcement of mandatory forum selection clauses." <u>Ace Hardware Int'l Holdings, Inc.</u>, 2012 WL 182236, at *4. Moreover, Puerto Rican cases decided

post-Conbraco have held that parties can litigate Law 75 cases outside of Puerto Rico. See, e.g., P.R. Surgical Techs. Inc. v. Applied Med. Distrib. Corp., No. 10-1797(JP), 2010 WL 4237927, at *3-4 (D.P.R. Oct. 26, 2010) (granting motion to dismiss Law 75 case based on improper venue in Puerto Rico); Marpor Corp. v. DFO, LLC, No. 10-1312, 2010 WL 4922693, at *5-6 (D.P.R. Dec. 2, 2010) (same). These cases are consistent with pre-Conbraco cases that transferred Law 75 cases out of Puerto Rico. See, e.g., Antilles Cement Corp. v. Aalborg Portland A/S, 526 F.Supp.2d 205, 207–10 (D.P.R. 2007) (rejecting argument that Law 75 cases must be heard in Puerto Rico and enforcing Danish forum selection clause); BMJ Foods Puerto Rico, Inc. v. Metromedia Steakhouses Co., L.P., 562 F.Supp.2d 229, 232–34 (D.P.R. 2008) (transferring Law 75 claim to Texas in absence of forum selection clause); Diaz–Rosado v. Auto Wax Co., Inc., No. 04–2296, 2005 WL 2138794, *2–5 (D.P.R. Aug. 26, 2005) (transferring Law 75 case to Texas); Maxon Eng'g Servs., Inc., v. U.S. Sci., Inc., 34 F.Supp.2d 97, 100 (D.P.R. 1989) (relying on Stewart Organization to uphold a forum selection clause that designated a foreign forum, despite Law 75).[7]

For all these reasons, the Court denies Acevedo's motion for change of venue.

## C. Summary Judgment

H&R Block moves for summary judgment on each count of its Amended Complaint. H&R Block also seeks summary judgment on each of Acevedo's counterclaims. The Court starts with H&R Block's claims in the Amended Complaint.

### 1. H&R Block's Count I

In Count I, H&R Block alleges that Acevedo has failed to pay royalties based on the gross receipts of his franchised business from the preparation of tax returns and the performance

---

[7] It is also worth noting that the parties specifically selected Missouri law to govern claims that arose out of their relationship.

of related services. H&R Block seeks damages due under the FLA in the amount of $531,405.46.

Acevedo argues that H&R Block is not entitled to summary judgment on Count I because he did not breach the FLA. Acevedo argues that, in early 2012, the parties agreed to a modification of the FLA whereby they would mutually reach a "true-up" of monies owed by either party. In other words, Acevedo takes issue with H&R Block unilaterally demanding the payment of monies without ever conducting the true-up.

There are multiple problems with Acevedo's argument. First, Acevedo's argument rests on his faulty belief that both parties were going to "mutually" agree to the amount of monies owed. Nothing in the record suggests that the parties would *mutually* agree to the amount of money that Acevedo owed H&R Block.[8] Rather, the record shows that H&R Block would, at the end of the tax season, consider both what Acevedo owed to H&R Block and any loan to which Acevedo may have been entitled.

Second, the FLA contains two clauses that support H&R Block's position. Section 25 states in relevant part that the FLA could only be amended in a writing signed by both parties. Further, Section 24 provides that the failure of a party to enforce any of the terms of the FLA for any period of time "shall not be deemed a waiver of such terms or conditions or of either party's rights thereafter to enforce each and every term and condition of this Agreement."

Acevedo asserts that if Missouri law applies then it is "well-established that 'no oral modification' clauses have no preclusive effect when the parties engage in modification by valid contractual formalities." See Jennings v. SSM HealthCare St. Louis, 355 S.W.3d 526, 535 (Mo.

---

[8] The Court notes that Acevedo's Answer in this case contradicts his theory that the parties' would "mutually" conduct a true-up. He states in paragraph 27 of his Answer that the instructions given to him by H&R Block's representatives were that "in due time Block would do a 'set off' between the amounts Block owed Defendant and the amounts that Defendant could possibly owe Plaintiff, and that until such calculation was made Defendant should hold on making any payment."

Ct. App. 2011). However, <u>Jennings</u> and the other cases cited by Acevedo still require a valid, subsequent oral agreement after the written contract. <u>See id.</u> ("An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate *a subsequent oral agreement to the contrary*.") (emphasis added). No oral agreement exists in this case because it lacks consideration. Missouri law requires that any alleged oral contract contain consideration. <u>Cash v. Benward</u>, 873 S.W.2d 913, 916 (Mo. Ct. App. 1994). In this case, Acevedo has failed to show any evidence or facts from which it could be inferred that he gave any consideration for the purported oral agreement. Rather, the purported oral agreement was made purely for Acevedo's benefit. <u>See</u> <u>Holt v. Story</u>, 642 S.W.2d 394, 396 (Mo. Ct. App. 1982) (noting that consideration was not sufficient when it was "purely for the benefit of the plaintiffs"). For these reasons, the Court finds that H&R Block is entitled to summary judgment on Count I.

### 2. H&R Block's Count II

H&R Block alleges, in Count II, that Acevedo failed to pay amounts owed under the Settlement Agreement. Specifically, H&R Block states that there is no genuine dispute that Acevedo has failed to pay H&R Block the amounts due from the Settlement Agreement. H&R Block seeks damages resulting from the breach in the amount of $60,000, plus pre- and post-judgment interests and costs, as well as expenses and attorneys' fees as permitted by the FLA. Acevedo opposes summary judgment on this claim for the same reasons stated above. For the reasons expressed above, summary judgment is granted to H&R Block on Count II.

### 3. H&R Block's Count III

In Count III, H&R Block alleges that under the promissory note executed along with the Assisted Acquisition Agreement, H&R Block's $800,000 loan to Acevedo became due upon

demand by H&R Block if there was an "Event of Default." H&R Block alleges that Acevedo breached the FLA by failing to pay the $531,406.46 in royalties. H&R Block seeks damages in the amount of $800,000 plus interest and attorneys' fees. Acevedo opposes summary judgment for the same reasons expressed above. For the reasons expressed above, summary judgment is granted to H&R Block on Count III.

### 4. H&R Block's Count IV

H&R Block argues there is no genuine dispute that Acevedo has failed to deliver client records to H&R Block in violation of the FLA. H&R Block argues that its termination of the franchise agreement, which required Acevedo to deliver the client records, was valid and effective.

Federal courts have recognized that "[t]he franchisor has the power to terminate the relationship where the terms of the franchise agreement are violated." McDonald's Corp v. Robertson, 147 F.3d 1301, 1309 (11th Cir. 1998) (citing S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir. 1992); see also Heating & Air Specialties, Inc. v. Jones, 180 F.3d 923, 931 (8th Cir. 1999) (finding good cause for termination of franchise agreement when franchisee failed to pay royalties) (Arkansas law).

Acevedo argues that at the time of default he was entitled to a loan of $350,000 under the "Additional Loan Amount" described in Section 2 of the Assisted Acquisition Agreement and, therefore, that amount should have been treated as a setoff. This argument does not address whether H&R Block's termination of the FLA was valid. The Court finds that H&R Block's termination of the FLA was effective and valid because Acevedo failed to pay royalties owed.

Having determined that the termination of the FLA was valid, the Court turns to whether Acevedo has failed to comply with the FLA's post-termination obligations to deliver client

information and records.  Section 16(e) of the FLA requires, upon termination of the parties' agreement, that Acevedo was to deliver to H&R Block all client information and records.  It is undisputed that Acevedo has not delivered this information.  Therefore, H&R Block is entitled to summary judgment on Count IV.

### 5. H&R Block's Count V

Lastly, H&R Block states no genuine issues of fact remain regarding Acevedo's violation of the post-termination covenants not to compete.  H&R Block states that Acevedo has failed to comply with Sections 12(b)-(f) of the FLA regarding covenants not to compete.  More specifically, H&R Block submits that the FLA prohibits Acevedo for two years after the termination of the agreement from (1) soliciting former clients of the franchised business, and (2) engaging in a tax preparation business within 25 miles of Acevedo's formerly franchised locations.

It is undisputed that Acevedo has failed and refuses to comply with the post-termination obligations in the FLA by continuing to operate tax return preparation offices at his formerly franchised locations and he indicates that he intends to do so into 2014.  Further, Acevedo continued to make money on tax return preparations in 2013 in his formerly franchised territories.  Acevedo's only apparent objection to H&R Block's argument is that he is not in default, and further, Puerto Rico law governs the covenant not to compete.  Acevedo contends that under Puerto Rico law, H&R Block cannot enforce a two-year restrictive covenant.

The Court agrees with H&R Block for two reasons.  First, the Court finds that Missouri law applies, and under Missouri case law the above-cited restrictive covenants are reasonable.  See Herrington v. Hall, 624 S.W.2d 148 (Mo. Ct. App. 1981) (finding covenant not to compete reasonable when covenant applicable for three years within a 10 mile radius of formerly licensed

business); <u>Gold v. Holiday Rent-A-Car, Int'l.</u>, 627 F. Supp. 280 (W.D. Mo. 1985) (finding reasonable a covenant applicable for two years within 75 miles of formerly franchised business). Second, even if Puerto Rico law applies, Puerto Rican law permits non-compete clauses in franchise agreements so long as they are reasonable in determining the time, space and subject matter restrictions. <u>See</u> <u>Franquicias Martin's BBQ, Inc. v. Luis Garcia de Gracia</u>, No. CC-2009-0410, 2010 WL 1994795 (P.R. 2010) (finding non-complete clause in franchise agreement valid, even though non-complete clause remained in effect for two years and applied to a radius of 10 miles).

There is no genuine dispute that Acevedo has breached and is continuing to breach the post-termination covenants found in Section 12(b) of the FLA. H&R Block is therefore granted summary judgment on Count V.

## D. Acevedo's Counterclaims

### 1. Breach of Contract

In Count I of the Amended Counterclaim, Acevedo seeks damages of $350,000 for a breach of the Assisted Acquisition Agreement. H&R Block moves for summary judgment on this claim.

In Section 2 of the Assisted Acquisition Agreement it states that H&R Block "may loan [Acevedo] an additional amount of up to" $350,000 if Acevedo meets certain business requirements. Thus, H&R Block was obligated to pay the Additional Loan Amount (up to $350,000) if Acevedo received gross receipts in the amount of $2,041,820.10.[9]

It is not entirely clear why Acevedo believes he is entitled to the $350,000. Acevedo has not submitted any evidence suggesting he reached the gross receipt amount (under either figure)

---

[9]  The Assisted Acquisition Agreement also provides that "[t]o the extent the Threshold Amount is not met, the Additional Loan Amount shall be reduced by one dollar for every dollar below the Threshold Amount."

specified in the Assisted Acquisition Agreement. Further, and most importantly, Acevedo was not entitled to any "Additional Loan Amount" because he breached the Assisted Acquisition Agreement and the FLA by failing to pay royalties under the FLA. H&R Block is thus entitled to summary judgment on Acevedo's breach of contract claim in Count I.

### 2. Count II—Tortious Interference With a Contract

H&R Block argues that it is entitled to summary judgment on Acevedo's tortious interference with a contract claim. A claim for tortious interference with a contract or business expectancy requires the following: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and, (5) damages resulting from defendant's conduct." Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 796 S.W.2d 369, 372 (Mo. 1990) (en banc) (citing Fischer v. Forrest T. Jones & Co., 586 S.W.2d 310, 315 (Mo. 1979) (en banc)).

> There is no impropriety of self-interested interference when a defendant has a legitimate economic interest in the contract or expectancy. One who has a present existing economic interest, such as a prior contract or his own or a financial interest in the affairs of the person persuaded not to enter into a contract, is privileged to interfere with another's business expectancy to protect one's own economic interest.

Id. (internal citations omitted).

Acevedo contends that summary judgment is not appropriate because H&R Block told his former clients that he was no longer operating and/or no longer associated with H&R Block. Acevedo contends that one of his managers told him that a number of former clients had come to the office and told the manager that a representative of H&R Block told the client that Acevedo was no longer in business.

First, the statement that one of Acevedo's managers told him that former clients believed he was no longer in business is hearsay, and hearsay cannot defeat a summary judgment motion. See Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 817 (8th Cir. 2010) (citation omitted). Second, Acevedo has failed to establish that H&R Block lacked justification while attempting to enforce the non-compete covenant. Missouri law allows a company to attempt to enforce its rights under a non-compete so long as it has a "reasonable, good faith belief in the validity of the agreement." Healthcare Services of the Ozarks, Inc. v. Copeland, 198 .W.3d 604, 614 (Mo. 2006) (en banc); see also Luketich v. Goedecke, Wood & Co., Inc., 835 S.W.2d 504, 508 (Mo. Ct. App. 1992) ("The law in Missouri is settled that no liability arises for procuring a breach of contract where the breach is caused by the exercise of an absolute right, that is, an act which one has a definite legal right to do without qualification."). In this case, Acevedo has not produced any evidence suggesting that H&R Block did not have "reasonable, good faith belief" in the validity of the non-compete covenant. Rather, the record establishes that H&R Block has consistently maintained that Acevedo's conduct amounted to a breach of the covenant not to compete. While there is some evidence that Acevedo believed he had not defaulted or violated the parties' agreements, there is nothing that requires H&R Block to agree with Acevedo's contention. Therefore, the Court concludes that H&R Block was justified in acting to enforce the terms of the restrictive covenant.

Moreover, Acevedo has failed to produce any evidence that a single client was induced not to use his services or that he suffered any damages. To be sure, Acevedo's profits increased from 2012 to 2013, and the former clients who alleged they were told Acevedo was no longer in business found out that he was still in business. As such, Acevedo has failed to establish that any client was induced not to use his services or that he suffered any damages. For these reasons,

H&R Block is granted summary judgment on Acevedo's tortious interference with a contract claim.

### 3. Defamation

H&R Block moves for summary judgment on Acevedo's claim for defamation. In order to succeed on a defamation claim, Acevedo is required to show (1) a publication; (2) of a defamatory statement; (3) that identifies the plaintiff; (4) that is false; (5) that is published with the requisite degree of fault; and (6) that damages plaintiff's reputation. E.g., Fisher v. Wal-Mart Stores East, L.P., 619 F.3d 811, 820 (8th Cir. 2010) (applying Missouri law)

Acevedo's defamation claim is based on statements that representatives of H&R Block allegedly told former clients of Acevedo's, namely that he was either no longer in business or that he was no longer associated with H&R Block. Acevedo's claim for defamation fails for at least two reasons. First, there is nothing in the record to support Acevedo's claims that these alleged statements were false. See Rice v. Hodapp, 919 S.W.2d 240, 243 (Mo. 1996) (en banc); Nigro v. St. Joseph Med. Ctr., 371 S.W.3d 808, 818 (Mo. Ct. App. 2012) ("Slight inaccuracies are immaterial if the allegedly defamatory charge is true in substance."). The comments that were allegedly made were true in substance because Acevedo was in default under the FLA and H&R Block terminated the relationship.

Second, Acevedo has failed to establish any damages in connection with the purported false statements. Missouri law requires a plaintiff to prove reputational harm in order to recover damages in a defamation case. E.g., Kenney v. Wal-Mart Stores, Inc., 100 S.W.3d 809, 813 (Mo. 2003) (en banc); Overcase v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. 2000) (en banc). Acevedo has presented no evidence from which a jury could conclude that he suffered any damage to his reputation. In fact, Acevedo has failed to address H&R Block's argument

relating to damages in his brief. Therefore, summary judgment will be granted to H&R Block on Acevedo's claim for defamation.

## III.  Conclusion

Accordingly, it is hereby

ORDERED that plaintiff H&R Block Tax Services LLC Motion for Summary Judgment (Doc. #84) is granted.  It is further

ORDERED that defendant Lutgardo Acevedo-Lopez's Motion to Dismiss or For Summary Judgment, and for Change of Venue (Doc. #86) is denied.  It is further

ORDERED that Acevedo is to deliver to H&R Block the confidential and proprietary materials that are within Acevedo's possession, custody, or control, including, but not limited to, all client information and files used or developed in his franchised business.  It is further

ORDERED that Acevedo and all persons in concert or participation with him is enjoined from (1) soliciting former clients of Acevedo's franchised businesses, and (2) engaging in the commercial preparation of income tax returns or the performance of related services in or within a radius of twenty-five (25) miles of his former Franchise Territory.  It is further

ORDERED that Acevedo shall comply with all other post-termination obligations contained in his contracts with H&R Block.  It is further

ORDERED that H&R Block is awarded damages as the result of Acevedo's failure to pay royalties owed under the FLA in the amount of $531,405.46.  It is further

ORDERED that H&R Block is awarded damages as the result of Acevedo's failure to make payments due under the Settlement Agreement in the amount of $60,000.  It is further

ORDERED that H&R Block is awarded damages for Acevedo's failure to repay $800,000, plus interest, owed to H&R Block under the Assisted Acquisition Promissory Note.  It is further

ORDERED that H&R Block is awarded attorneys' fees pursuant to the FLA.  It is further

ORDERED that H&R Block shall submit records supporting an award of reasonable attorneys' fees within fourteen (14) days of the date of this Order.  It is further

ORDERED that Acevedo shall provide the Court a written report setting forth in detail, under oath, the manner in which he has complied with the Court's orders within twenty-one (21) days of the date of this Order.


 /s/ Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

DATED:  March 5, 2014