IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| H&R BLOCK TAX SERVICES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-1320-CV-W-FJG |
| | ) | |
| LUTGARDO ACEVEDO-LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court are (1) Plaintiff's Motion for Attorneys' Fees, Costs and Expenses (Doc. No. 116); (2) Plaintiff's Motion for an Order Enforcing a Judgment for a Specific Act (Doc. No. 134); and (3) the parties' most recent Status Reports (Doc. Nos. 146 and 147).

**I.      Motion for Attorneys' Fees (Doc. No. 116)**

Plaintiff moves for its attorneys' fees pursuant to the Court's Orders of March 5, 2014 (Doc. No. 105) and March 20, 2014 (Doc. No. 113).   Specifically, plaintiff requests an award of $650,585.43, representing attorneys' fees, costs, and expenses.

    A.     Background

> This case arose out of a series of agreements entered into in 2007, 2010, and 2012 between Block and Defendant Lutgardo Acevedo-López ("Acevedo"). All of the agreements related, in one way or another, to Acevedo's operation of franchised tax return preparation outlets in nine cities and towns in western Puerto Rico using client information and records belonging to Block.
>
> In 2012, Acevedo defaulted on his payment of substantial amounts owed to Block under his agreements, including more than $500,000 in royalties owed under a 2007 franchise agreement, $30,000 owed under a 2010 settlement agreement, and $800,000 owed under a 2012 assisted

acquisition agreement and promissory note. When Acevedo failed to cure his defaults after notice and an opportunity to do so, Block terminated Acevedo's franchise agreement and demanded that Acevedo comply with his post-termination obligations under that agreement. Those obligations included payment to Block of all amounts owed to it by Acevedo and compliance by Acevedo with post-termination covenants in which he agreed to deliver to Block its client records and to refrain from operating a tax preparation business for a limited period within 25 miles of his formerly franchised locations.

Acevedo failed to comply with . . . Block's demands, and on November 1, 2012, Block filed this action, seeking payment of the amounts owed to it under Acevedo's franchise agreement, settlement agreement, and promissory note, as well as injunctive relief enforcing the post-termination obligations contained in Acevedo's franchise agreement. (Doc. 1.) Block also sought the attorneys' fees, costs and expenses it incurred in this action, as provided for in Section 16(a) of Acevedo's franchise agreement (Doc. 1-2 at 14, § 16(a)) and in Acevedo's promissory note (Doc. 1-5 at 6). Acevedo counterclaimed alleging breach by Block of the 2012 assisted acquisition agreement between the parties (pursuant to which Acevedo had delivered his promissory note), tortious interference with business relations, and defamation. (Doc. 35.)

The case was . . . litigated for almost a year and a half, including an interlocutory appeal to the Eighth Circuit Court of Appeals.[1] On March 5, 2014, the Court granted Block's motion for summary judgment on all of the claims and counterclaims in the case (Doc. 105), denied Acevedo's cross-motions for summary judgment, to dismiss for lack of jurisdiction, and to transfer venue (*id.*), and awarded Block its attorneys' fees in this action as provided for in its franchise agreement (*id.* at 25). On March 20, 2014, following motions by Acevedo to stay the final injunctive relief ordered by the Court and for reconsideration of the Court's summary

---

[1] Notably, the interlocutory appeal was argued less than a month before the parties filed summary judgment motions in this matter. The Eighth Circuit issued its decision on February 12, 2014, and its mandate issued on March 5, 2014, the same date that Judge Wright's order on the summary judgment motions was entered.

> judgment decision, the Court clarified its Order of March 5, 2014, and again awarded Block attorneys' fees (Doc. 113).

Doc. No. 116, pp. 1-2.

B.  Standard

"In a diversity action, state law governs the availability of attorney's fees where no conflicting federal statute or court rule applies." Weitz Co. v. MH Washington, 631 F.3d 510, 528 (8th Cir. 2011) (citing Burlington Northern R. Co. v. Farmers Union Oil Co., 207 F.3d 526, 534 (8th Cir. 2000)). Under Missouri law, "'[i]f a contract provides for the payment of attorney's fees in the enforcement of a contract provision, the trial court must award them to the prevailing party.'" Lee v. Investors Title Co., 241 S.W.3d 366, 368 (Mo. Ct. App. 2007) (quoting White v. Marshall, 83 S.W.3d 57, 63 (Mo. Ct. App. 2002)).

In determining the reasonableness of attorneys' fees requested pursuant to a contractual agreement governed by Missouri law, the court should consider: "(1) the time expended; (2) the nature, character and amount of services rendered; (3) the nature and importance of the litigation; (4) the degree of responsibility imposed on the attorney; (5) the amount of money involved; (6) the degree of professional ability, skill, and experience called for and used; and (7) the result obtained." Coral Group, Inc. v. Shell Oil Co., No. 4:05-CV-0633-DGK, 2013 WL 4067625, at *4 (W.D. Mo. Aug. 12, 2013); see also Weitz, 631 F.3d at 528-29.

C.  Analysis

As an initial matter, defendant asserts that not all of the fees sought are traceable to a contract which provides for the payment of attorneys' fees. Although certain agreements between the parties (the Franchise License Agreement dated August 28,

2007, and the Promissory Note) provide for the imposition of all costs incurred and reasonable attorney's fees in the event of default or collection efforts, defendant asserts that the 2010 Settlement Agreement entered into by the parties has no provision allowing for an award of attorneys' fees. Defendant also argues that certain attorneys' decision to engage in block billing makes it impossible to assess the amount of time associated with work related to the Settlement Agreement. Defendant argues the Court should apply a 20% across the board reduction to Block's fee request to adjust for time spent on the Settlement Agreement claim.

In reply, however, plaintiff notes that under the express terms of the parties' Franchise License Agreement, failure to pay amounts owed under the Settlement Agreement also constitutes a default of the Franchise License Agreement, which does include an attorneys' fees provision. Section 16(a) of defendant's Franchise License Agreement provides at follows:

> Upon expiration or termination of this Agreement for any reason, or upon its transfer or assignment as permitted herein, all rights of Franchisee hereunder shall end, and Franchisee shall, at Franchisee's sole cost and expense (unless a successor agreement is entered into pursuant to section 4):
>
> (a) Promptly pay all sums owing to Block and its subsidiaries and affiliates. In the event of termination for any default of Franchisee, such sums shall include all damages, costs and expenses, including reasonable attorneys fees, incurred by Block as a result of the default.

Doc. No. 128-1, § 16(a). Thus, plaintiffs state that the attorneys' fees incurred related to the Settlement Agreement claim are also compensable. Upon consideration of the parties' arguments and the language of the Franchise License Agreement, the Court is

4

convinced that the attorneys' fees incurred in enforcing the 2010 Settlement Agreement are compensable.

Plaintiff asserts that all of the factors for an award of attorneys' fees and expenses under Missouri law have been met.

### 1. Time Spent on the Matter

Plaintiff asserts that the time spent on this matter (a total of 2,150.67 timekeeper hours over a period of a year and a half) was reasonable, and should be considered presumptively reasonable because plaintiff has timely paid the attorneys' fees and expenses in connection with this action to date. See Coral Group, 2013 WL 4067625, at *4. Plaintiff notes that three law firms represented it in this action: (1) Gray Plant Mooty Mooty & Bennett, P.A., from Washington, D.C., serving as lead counsel; (2) Spencer Fane Britt & Browne, LLP, from Kansas City, Missouri, serving as local counsel; and (3) Fortuño & Fortuño, Fas, from San Juan, Puerto Rico, which served as local counsel on discovery in Puerto Rico and issues regarding Puerto Rico law.

Gray Plant Mooty attorney Peter J. Klarfeld served as plaintiff's lead counsel, and has approximately 35 years' experience in representing franchisors in litigation with their franchisees in state and federal courts. Mr. Klarfeld billed 822.6 hours to this matter.[2] Other shareholders billed as follows: Iris Figueroa Rosario, 283.3 hours; and Jeffrey L. Karlin, 74 hours. The following associate attorneys performed work as follows: Julia C. Colarusso, 89.2 hours; Maisa Jean Frank, 17.1 hours; Justin L. Sallis, 56.3 hours; and

---

[2] The Court does not discuss the attorneys' billing rates in this Order, as it is apparent from the billing records that the attorneys discounted much of their billing rates in ways that vary from bill to bill. Furthermore, defendant does not challenge the billing rates used by any of the attorneys or other timekeepers.

Karli Peterson, 4 hours. Paralegals and litigation support specialists billed the following time: Jose Garcia, 176.4 hours; Tracy N. Castillo, 40 hours; and Leanne D. Olson, 1.2 hours. The total amount billed by Gray Plant Mooty Mooty & Bennett, P.A., is $506,123.96, representing $492,525.23 in fees and $13,598.73 in costs and expenses.

David M. Kight, who for most of the case was a partner at Spencer Fane Britt & Browne (and who now is a partner at Jackson Lewis, P.C.), served as local counsel for plaintiff. The total amount billed by Spencer Fane in connection with this case is $115,434.40, representing $111,890.13 in fees and $3,544.27 in costs and expenses. Mr. Kight, who reviewed filings with this Court and the Eighth Circuit, provided advice on litigation strategy, and was responsible for oral communication with the Court on behalf of Block and with Acevedo's local counsel, billed 248.2 hours. Other attorneys at Spencer Fane provided services as follows: (1) Casey P. Murray, 84.4 hours; (2) Barry L. Pickens, 70 hours; (3) Douglas M. Weems, 4 hours; (4) Bryant T. Lamer, 4 hours; (5) Lucinda H. Luetkemeyer, 5 hours; (6) Brian Peterson, 5 hours; (7) Lara Pabst, 3 hours; (8) Carlos Marin, 1 hour; and (9) Lindsay Perkins, less than one hour. Paralegals billed as follows: Judy Craig, 3.4 hours; and Kathie Tatman, 54.27 hours.

Juan Carlos Fortuño Fas of Fortuño & Fortuño, Fas in San Juan, Puerto Rico, provided significant services in discovery and other litigation support in Puerto Rico, the location of defendant. Fortuño & Fortuño, Fas billed a total of $29,027.07, consisting of $18,790 in fees and $10,237.07 in costs. Mr. Fortuño billed 31.30 hours to this matter. Juan R. Rivera-Font, another partner at the firm, billed 17.30 hours. Two other staff members of the firm performed 1.60 hours of work.

Defendant responds that plaintiff's counsel expended duplicative and excessive time, consisting of billings from eighteen attorneys and seven non-attorney timekeepers, spread out over three law firms. Defendant, who had counsel located both in Puerto Rico and in Kansas City, notes that plaintiff's legal team was more than four times the size of that employed by defendant. Defendant asserts that this is "a classic instance of over-lawyering and excessive and redundant billing." Doc. No. 128, p. 8. Defendant attaches a chart as Exhibit J to his suggestions in opposition that shows examples of what he claims are duplicative billings.

Plaintiff replies, however, and this Court agrees, that the use of multiple lawyers is due to many of the tasks being done by junior lawyers at lower billing rates, reflecting appropriate delegation of tasks to the level at which they could be handled most economically. Further, plaintiff's engagement of three law firms was reasonable, given that many of the records and the defendant resided in Puerto Rico, the case was filed in Kansas City, and lead counsel had handled previous franchise agreement cases involving the same or similar agreements. The Court, therefore, believes that the time spent on the matter was generally reasonable.

2. Nature, Character, and Amount of Services

With respect to the nature, character and amount of services, plaintiff notes that this case was complex, and involved multiple claims and counterclaims based on several interrelated agreements. Other complicating factors included: (1) defendant's location in Puerto Rico; (2) discovery being conducted in both Spanish and English; (3) defendant providing conflicting responses in discovery, leading plaintiff to subpoena defendant's

bank for clarifying information; (4) preparing nine present and former Executive Officers of Block for deposition, given that defendant alleged all nine had made undocumented oral representations to him that amounted to oral modifications of his agreements with Block; and (5) plaintiff preparing to depose defendant's expert witness, only to have the expert withdraw shortly before the deposition, and then preparing for and taking the deposition of defendant's new expert witness.

In response, defendant argues that, given that the agreements at issue in this case are standard form agreements regularly used by H&R Block, and Block does not contend that these agreements contained novel provisions or varied dramatically from those typically used, the matter could have been handled more efficiently. The Court finds, however, that the complicating factors listed by plaintiff (and detailed above), demonstrate that the nature of the services provided by plaintiff were more complicated than typical, particularly considering the numerous alleged oral modifications of the contracts asserted by defendant in his counterclaims.

### 3. Nature and Importance of the Litigation

With respect to the nature and importance of the litigation, plaintiff argues that the claims and counterclaims were significant both in the amount of money involved and in preserving the basic integrity of Block's franchising line of business. In particular, plaintiff argues that it is party to franchise agreements involving thousands of franchised tax return preparation offices in the United States and its territories, with the majority of agreements in a form similar to that used in this case. If plaintiff was unable to enforce its franchise agreements in the current case, the ramifications of that failure would be felt

throughout plaintiff's franchise system, and other franchisees may have felt they too could refuse to pay royalties owed to plaintiff. Defendant does not directly respond to these arguments, and the Court finds generally that this factor has been met.

4. Degree of Responsibility of Plaintiff's Attorneys

With respect to the degree of responsibility imposed on plaintiff's attorneys, plaintiff argues that they were responsible for much, including: (1) protecting plaintiff's franchise agreements from challenge, which could have ramifications throughout plaintiff's franchise system; (2) examining the relationship between the various agreements (defendant's conversion agreement, franchise agreement, settlement agreement, assisted acquisition agreement, and promissory note); (3) examining the five-year business relationship between plaintiff and defendant; (4) having technological knowledge regarding plaintiff's products; (5) handling simultaneous district court and appellate court proceedings; and (6) conducting discovery in Puerto Rico as well as the continental United States, including review of voluminous electronic communications, some of which were in Spanish. Again, defendant does not respond directly to these arguments, and the Court finds that this factor has been demonstrated.

5. Amount of Money Involved

With respect to the amount of money involved, plaintiff indicates it was substantial and it needed to pursue and defend the claims vigorously. The Court has already awarded plaintiff over $1.3 million in damages, plus attorneys' fees. Additionally, the Court has ordered defendant to deliver plaintiff its client records. In addition to plaintiff's claims, defendant made an amended counterclaim, seeking $350,000 on Count I, "a

9

sum exceeding $75,000" in compensatory damages, plus "punitive damages in the sum of $1,000,000.00" on Count II, and an addition compensatory damages award to exceed $75,000 and punitive damages in $1,000,000.00 on Count III (see Doc. No. 35). Defendant does not respond to these arguments, and the Court finds that the attorneys' fees sought bear a reasonable relationship to the amount of money involved in this case.

      6.      Degree of Professional Ability, Skill, and Experience

With respect to degree of professional ability, skill, and experience used in this case, plaintiff argues that this case called for substantial experience in litigation involving franchisors, as well as the specific provisions contained in the lengthy form agreements that plaintiff enters into with its franchisees. Again, defendant does not respond to these arguments, and the Court finds that these factors weigh towards awarding attorneys' fees as well.

      7.      Results Obtained

Finally, with respect to the result obtained, plaintiff notes it prevailed on all of the claims and counterclaims in this case (and on its interlocutory appeal) and was awarded substantial damages, injunctive relief, and attorneys' fees.

Defendant responds, indicating that plaintiff's counsel should not receive payment for the work performed on Block's motion for preliminary injunction and for Block's appeal of the order denying preliminary injunction, which produced no practical benefit. See Order dated February 11, 2013, Doc. No. 29, denying motion for preliminary injunction; Eighth Circuit Opinion dated February 12, 2014 (among other things, declining to order the district court to enter a preliminary injunction on remand).

Defendant argues that fees are not reasonable when the claims or requests for relief were unsuccessful. See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983); Marez v. St.-Gobain Containers, Inc., 688 F.3d 958, 966 (8th Cir. 2012); Little Rock School Dist. v. Arkansas, 674 F.3d 990, 993 (8th Cir. 2012). Defendant argues that, contrary to plaintiff's suggestions, it was not successful on appeal, as the Eighth Circuit vacated and remanded the order denying preliminary injunction because the trial court did not find facts with particularity as required by Rule 52(a)(2). In particular, the Eighth Circuit found that "Block submitted no fact affidavit or expert opinion supporting its claim of more than the mere possibility of irreparable injury during the pendency of its lawsuit," and that the "showing [of irreparable harm] was minimal." Doc. No. 99-1, at 5. Further, the Eighth Circuit noted,

> Block does not seek a preliminary injunction preserving the *status quo*, the basic purpose of such relief. Rather, it seeks a preliminary injunction granting the equitable relief it *may* be granted *if* it prevails on the merits of its contractual claims. . . . [T]he sparse preliminary injunction record is the result of Block seeking preliminary injunctive relief based on the slimmest of factual showings.

Id. at 6. Defendant also complains that the preliminary injunction motion provided no strategic benefit to plaintiff, and plaintiff compounded the waste of resources by filing unnecessary motions to expedite the briefing schedule even though defendant was not served until almost a month after the filing of the action, and knowing that defendant would need to hire legal counsel. Defendant also notes that plaintiff spent numerous hours pursuing a motion to expedite the appeal, which was unsuccessful. Defendant notes that plaintiff spent approximately 556.4 hours on its failed attempts to obtain a

11

preliminary injunction, as well as on the interlocutory appeal. Defendant asserts that this Court should deny all fees and costs related to the attempts to obtain the preliminary injunction. According to defendant, those fees and costs are reflected on defendant's Exhibit I, and amount to $222,359.33. Plaintiff points out, however, in Doc. No. 132, n.1, that defendant uses undiscounted billing rates to come up with the total amount, and the amount billed to plaintiff was less.

Plaintiff replies that a motion for preliminary injunction is "not a failure simply because the district court never actually ruled on the motion." Armstrong v. ASARCO, Inc., 138 F.3d 382, 388 (8th Cir. 1998). Plaintiff notes that although plaintiff's motion for preliminary injunction was initially denied by the Court, plaintiff was successful in having the order denying relief vacated by the Eighth Circuit Court of Appeals. Plaintiff notes that, upon remand, the District Court granted the request for permanent injunctive relief. Block states, "Acevedo's characterization notwithstanding, it is hard to understand how the Court of Appeals' decision can be reasonably viewed as anything other than success by Block on its interlocutory appeal." Doc. No. 132, p. 5. Block argues that its filing of a motion for preliminary injunction at the outset of this case was legally warranted, and was required to protect Block's interests. Plaintiff also indicates that the motion for preliminary injunction did not fail on the merits, but was instead rendered moot by the grant of permanent injunctive relief.

Upon consideration of the parties' arguments, the Court believes a reduction for fees spent towards the appeal of the denial of preliminary injunction is warranted. The appeal had the effect of increasing the costs of the litigation, yet plaintiff's primary

12

argument on appeal was that Judge Wright had not made findings sufficient under Fed. R. Civ. P. 52(a)(2). The likely result of such an argument (and the result of this appeal) would be a remand of the case for further findings of fact and conclusions of law from the district judge. Given that the matter was not stayed in the district court while the interlocutory appeal was pending, moreover, it should have been apparent that the appeal would be decided at approximately the same time that the district court would be deciding motions for summary judgment.[3] In particular, once the Eighth Circuit indicated it would not expedite the appeal (see Eighth Circuit Case No. 13-1387, Order dated March 20, 2013), plaintiff ought to have realized that the result of the appeal would have had very little impact on the case. Yet, plaintiff's counsel continued to bill substantial amounts of time towards the appeal. Even if plaintiff had achieved the best possible outcome—e.g., the Eighth Circuit had found that the record on appeal was sufficient for it to order that upon remand the district court enter immediate preliminary injunctive relief--that would not have made any substantial difference in this matter, given that Eighth Circuit's mandate issued the same day that Judge Wright granted permanent injunctive relief on summary judgment.

Therefore, the Court agrees with plaintiff that attorneys' fees for the interlocutory appeal of this matter should be denied. The Court, however, finds that attorneys' fees for the initial motion for preliminary injunction are awardable, given that plaintiff ultimately

---

[3] Summary judgment motions were due and filed less than a month after the appeal was argued before the Eighth Circuit, and this timeline had to have been known by the attorneys in this matter given the Court's amended scheduling order (Doc. No. 58, dated June 20, 2013; see also the Court's original scheduling order, Doc. No. 37, dated March 37, 2013, which had a dispositive motion deadline of August 15, 2013).

prevailed on arguments made at that stage of proceedings.

Accordingly, the Court reduces the amount of attorneys' fees awardable by the amount of fees spent on the interlocutory appeal. The Court deducts the following from the allowable fees:

| Attorney/Timekeeper | Hours Billed toward Appeal | Hourly Rate[4] | Total Amount of Reduction |
|---|---|---|---|
| Klarfeld | 193.5 | $468 | $90,558.00 |
| Sallis | 26.8 | $217 | $5,815.60 |
| Rosario | .9 | $323 | $290.70 |
| Frank | 2 | $230 | $460.00 |
| Garcia | 2.7 | $157 | $423.90 |
| Karlin | 55.1 | $408 | $22,480.80 |
| Castillo | 6.5 | $136 | $884.00 |
| Perkins | .2 | $200 | $40.00 |
| Kight | 42.2 | $335 | $14,137.00 |
| Murray | 4.9 | $225 | $1,102.50 |
| Tatman | 10.02 | $150 | $1,503.00 |
| Luetkemeyer | 5.6 | $225 | $1,260.00 |
| Pickens | 70.2 | $375 | $26,325.00 |
| **Total:** | **420.8** | | **$165,280.50** |

Moreover, the Court deducts travel and legal research expenses related to the appeal in the amount of **$4,120.36.**

Therefore, after considering the factors in awarding attorneys' fees and costs, the Court awards plaintiff a total of **$481,184.57**, representing attorneys' fees of **$457,924.86** ($623,205.36 requested less $165,280.50 in fees related to the appeal), and costs of **$23,259.71** ($27,380.07 requested less $4,120.36 related to the appeal).

**II.    Motion to Enforce Judgment and Status Reports (Doc. Nos. 134, 146 and 147)**

---

[4] The Court has reduced the hourly rate for each of these attorneys to match the effective rates for each attorney cited in plaintiff's exhibits to Doc. No. 116.

On July 2, 2014, plaintiff filed a motion to enforce judgment (Doc. No. 134), requesting that the Court appoint the United States Marshals Service to carry out defendant's obligation to deliver to Block its electronic and paper client records pursuant to the Court's Order dated March 20, 2014. At that time, plaintiff argued that due to defendant's failure to comply with the Court's orders (and due to defendant's detention on unrelated federal charges), the Court should appoint the United States Marshals Service under Rule 70 of the Federal Rules of Civil Procedure to carry out the transfer.

Before entering any order on the motion to enforce judgment, the Court requested the parties provide the Court with the names of defendant's corporate officers, names of any of defendant's office managers, and the location of the documents ordered to be turned over to the plaintiff. See Order, Doc. No. 137. In response to that order, the parties indicated that defendant's family had begun the process of gathering the documents responsive to the Court's previous orders, and that the documents would be transferred to plaintiff in the month of July. See Doc. No. 138. More recently, the parties jointly reported that the transfer of documents would take place on August 20, 2014. Doc. No. 142. After August 20, 2014 had passed without commentary from the parties, the Court ordered the parties to file a joint status report on or before September 9, 2014. See Order, Doc. No. 145.

On September 9, 2014, the parties filed their joint status report. Within that report, it appears that defendant has attempted to comply with the Court's previous orders. H&R Block complains, however, that (1) it only received one years' worth of electronic records, which are inaccessible because H&R Block was not given the license

codes for the software; (2) electronic records from 2007-2012 tax seasons were not turned over, and Acevedo-Lopez's family and attorneys assert that those records have been destroyed or otherwise no longer exist; and (3) paper records were turned over in disarray (in plastic bags and boxes that were disorganized). Plaintiff states, "Contempt sanctions may be less effective when directed toward a defendant who is already in prison and who has already been held liable to Block for over $1.3 million. Nonetheless, both Block's right to recover its property and the purpose of the Court's Orders have been frustrated, and further enforcement of the Court's Orders is warranted." Doc. No. 146, p. 5. Plaintiff, however, does not suggest what further action is warranted from the Court.

Defendant responds at page 6 of Doc. No. 146 that on August 20, 2014, plaintiff received from defendant all paper client tax records in defendant's custody, and on a disk provided by plaintiff, defendant copied all 2013 client electronic files and returned that disk to plaintiff on August 20; defendant asserts that it does not have electronic records for tax years 2007-2012, and believes that Block's agent Adrian Escalona previously received electronic copies of the records for those years.

In an additional status report filed with the Court on September 12, 2014, plaintiff indicates that defendant's counsel reports that the data from previous tax years that remained on defendant's computers has now supposedly been erased, and the computers have been sold to third parties by members of defendant's family. Plaintiff notes that this electronic data was plaintiff's property, and should not have been sold or erased by defendant or those acting in concert with him.

Upon consideration of the parties' positions, the Court declines to impose contempt sanctions upon defendant, as such sanctions are unlikely to have any effect on defendant at all, given his incarceration and his limited ability to control the disposition of his property. Plaintiff presumably is concerned that Acevedo (or his family or former employees) might use plaintiff's proprietary electronic information to unfairly compete with plaintiff in the next tax season, and is also concerned that plaintiff's proprietary electronic information may have been destroyed. The Court, however, has already entered injunctive relief against defendant and all persons acting in concert or participation with him. If plaintiff seeks relief against defendant's family members or others acting in concert with defendant, plaintiff should file a motion (and demonstrate that those allegedly in violation of this Court's Orders had notice of those orders prior to the alleged violation(s)).

Finally, the Court notes that although plaintiff previously moved for an order appointing the United States Marshals Service to deliver the electronic and paper records in the custody of defendant, the Court believes that the United States Marshals Service could not accomplish anything additional of value to this case.

Therefore, for the foregoing reasons, plaintiff's motion to enforce (Doc. No. 134) is **DENIED**, and the Court will not impose any further sanctions against defendant at this time.

### III.     Conclusion

Therefore, for the foregoing reasons:

(1) Plaintiff's Motion for Attorneys' Fees, Costs and Expenses (Doc. No. 116) is

**GRANTED IN PART**, and plaintiff is awarded a total of **$481,184.57**, representing attorneys' fees of **$457,924.86** and costs of **$23,259.71**; and

(2) Plaintiff's Motion for an Order Enforcing a Judgment for a Specific Act (Doc. No. 134) is **DENIED.**

**IT IS SO ORDERED**.

Date: October 1, 2014  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge